## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **GLENN SELVIE,** | |
| **Plaintiff,** | **No. 12 C 5565** |
| **v.** | **Magistrate Judge Mary M. Rowland** |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,**[1] | |
| **Defendant.** | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Glenn Selvie filed this action seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying his applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 216(i), 223(d), 1614(a)(3)(A). The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and the parties have filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this opinion.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security and is substituted for her predecessor, Michael J. Astrue, as the proper defendant in this action. Fed. R. Civ. P. 26(d)(1).

# I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (SSA), a claimant must establish that he or she is disabled within the meaning of the SSA.[2] *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq*. The SSI regulations are virtually identical to the DIB regulations and are set forth at 20 C.F.R. § 416.901 *et seq*.

point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on October 30, 2009, alleging that he became disabled on March 15, 2008, due to a severe back problem and the removal of two disks from his back. (R. at 12, 128–41). The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id*. at 12, 43–53, 47–59, 71). On March 3, 2011, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id*. at 12, 23–42). The ALJ also heard testimony from Julia L. Bose, a vocational expert (VE). (*Id*. at 12, 23–42, 127).

The ALJ denied Plaintiff's request for benefits on April 4, 2011. (R. at 12–18). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since March 15, 2008, the alleged onset date. (*Id*. at 14). At step two, the ALJ found that Plaintiff's status post herniated disc and surgery of the lumbar spine are severe impairments. (*Id*.). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id*. at 14–15).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[3] and determined that he has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) "except that [Plaintiff] must be able to use a cane as needed for ambulation" and "must have a sit/stand option allowing him to stand for 1 to 2 minutes after sitting for one hour." (R. at 15). At step four, based on Plaintiff's RFC and the VE's testimony, the ALJ determined that Plaintiff is unable to perform any past relevant work. (*Id*. at 17). At step five, based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including document preparer, addressor, call out operator, tube operator, and telephone quotation clerk. (*Id*. at 17–18). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the SSA. (*Id*. at 18).

The Appeals Council denied Plaintiff's request for review on May 22, 2012. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's

decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. RELEVANT MEDICAL EVIDENCE

Plaintiff was first treated at Stroger Hospital for low back pain and leg numbness on February 20, 2008. (R. at 260–01). Plaintiff returned on March 3, 2008, with complaints of low back pain. (*Id.* at 262). He was diagnosed with low back pain caused by a right L5-S1 herniated nucleus pulposus. (*Id.*). On March 14, 2008, Plaintiff returned to the emergency department with progressive pain and weakness in the right leg and was admitted the same day. (*Id.* at 269). On March 16, 2008, Plaintiff underwent an L5-S1 hemilaminectomy and discectomy. (*Id.* at 273).

On December 3, 2009, Debbie L. Weiss, M.D. conducted a 30-minute consultative examination on behalf of the Commissioner. (R. at 275–80). Plaintiff complained of constant low back pain which was worse when he walked for two hours, stood for thirty minutes, or tried to lift more than 20 or 30 pounds. (*Id.* at 277). He rated his pain as 5/10 and was not taking any medication for his pain. (*Id.*). On examination, Plaintiff's range of motion of the lumbar spine was normal, flexing to 90 degrees and extending to 25 degrees; his lateral bending was normal bilaterally and no deformity noted; there was no spasm or tenderness to his palpation; and his straight leg raising was negative for radicular symptoms in the lower extremities. (*Id.* at

279). Dr. Weiss's clinical impression was that Plaintiff had back problems. (*Id.* at 280).

On April 3, 2010, Mahesh Shah, M.D. conducted a 35-minute consultative examination on behalf of the Commissioner. (R. at 282–85). Plaintiff complained of severe low back pain. (*Id.* at 283). On examination, Plaintiff had marked tenderness in his lower back; his flexion was 70 degrees, extension was 10 degrees, and lateral flexions were 15 degrees on the right and 20 degrees on the left; his straight leg raising was 45 degrees on the right and 55 degrees on the left; and his gait was normal. (*Id.* at 284). Dr. Shah's clinical impression was that Plaintiff had low back pain with symptoms of right sciatica. (*Id.* at 285). An x-ray examination of Plaintiff's lumbar spine showed a mild degree of degenerative disc disease at the L5-S1 level. (*Id.* at 287).

On April 19, 2010, Calixto Aquino, M.D. completed a Physical Residual Functional Capacity Assessment on behalf of the SSA. (R. at 288–95). Dr. Aquino opined that Plaintiff could stand, sit, or walk about six hours with normal breaks in an eight-hour workday, and lift 10 pounds frequently and 20 pounds occasionally. (*Id.* at 289). He concluded that Plaintiff could occasionally climb ramps or stairs and stoop, but could never climb ladders, ropes, or scaffolds. (*Id.* at 290).

On April 28, 2010, Plaintiff returned to Stroger Hospital, complaining of lower back pain that had started a month ago. (R. at 304). He was given back-care tips

and back exercises and prescribed Diazepam, Tbuprofen, and Methocarbamol to treat his muscle spasms and pain. (*Id.* at 305).

On May 11, 2010, a CT scan of the lumbar spine revealed that Plaintiff had degenerative disc disease. (R. at 309). Bulging discs were seen extending from L4 to S1 and were more prominent at L5-S1. Posterior spurring was also seen at the same levels and osteoarthritis was seen at L4-L5 on the left side. (*Id.*). On May 21, 2010, Plaintiff was issued a cane at the Stroger Physical Therapy Department for his pain. (*Id.* at 310).

On June 8, 2010, an MRI of the lumbar spine revealed that Plaintiff had multi-level degenerative disc disease and mild degenerative facet arthropathy. (R. at 312). At L5-S1, there was diffuse posterior disc bulging with right paracentral disc protrusion effacing the ventral thecal sac and abutting the left proximal S1 traversing nerve root and displacing the right proximal S1 traversing nerve root. (*Id.*). At L4-L5, there was diffuse posterior disc bulging with partial posterior annular fissure and posterocentral disc protrusion with superior extension effacing ventral thecal sac and abutting the bilateral proximal L5 traversing nerve roots. (*Id.*). At T10-T11 the posterior disc was bulging effacing the ventral thecal sac and abutting the ventral spinal cord. (*Id.*).

On June 18, 2010, Plaintiff was seen at the Neurosurgery Outpatient Clinic for the results of his MRI. (R. at 313). His recurrent low back pain was described as "a little worst since last seen" on May 21, 2010. (*Id.*). The pain had been radiating to

his left leg since the beginning of the year. (*Id*.). Plaintiff denied motor weakness, denied balance and gait difficulty, but indicated that for the last month, he had been using a cane for balance when in pain. (*Id*.). Plaintiff was referred to the pain clinic and for physical therapy. (*Id*.). No acute neurosurgical intervention was indicated. (*Id*.).

On August 11, 2010, Plaintiff was seen for the first time at the Outpatient Pain Clinic following referral by the Neurosurgery Outpatient Clinic. (R. at 314). He reported that after his right lumbar microdiscetomy in 2008 for right-sided radicular pain, he had been pain free for two years. (*Id*.). He further reported that he began experiencing pain symptoms on his left side beginning in January 2010. (*Id*.). He reported that it was burning and sharp in quality at 5–8/10 on average and it comes and goes. (*Id*.). He further reported that the pain is worse when standing or walking, and is relieved when sitting and resting. (*Id*.). He indicated that his medications include Ibuprofen, Methocarbarnol, and Diazepam, which reduced his pain by 75 %. (*Id*.). On examination, Plaintiff was in no acute distress and ambulated with a cane. (*Id*.). No cervical neuropathy was appreciated and the Spurling's signs were negative bilaterally. (*Id*.). He had some tenderness on the left side paraspinal L4-L5. (R. at 315). Plaintiff was found to have low back pain with radiculopathy and prescribed Gabapentin. (*Id*.). Plaintiff agreed to lumbar steroid epidural injection on his next visit. (*Id*.).

On September 15, 2010, Plaintiff received his first lumbar steroid epidural injection at L5-S1. (R. at 328). His pain score decreased to 7/10 after the injection. (*Id*. at 329). Plaintiff received a second lumbar steroid epidural injection at L5-S1 on October 27, 2010. (*Id*. at 338). A third injection was performed on December 7, 2010. (*Id*. at 343).

On December 7, 2010, Plaintiff was examined by Peter Orris, M.D, a specialist in occupational and environmental medicine, for a disability evaluation. (R. at 323–25). Dr. Orris reviewed the MRI report of June 8, 2010 and the neurosurgery progress notes of June 18, 2010. (*Id*. at 323). On examination, Dr. Orris found that Plaintiff had continued lower extremity radiculopathy and needed pain management and physical therapy. (*Id*.). Dr. Orris further found that Plaintiff could stand or walk for two hours uninterrupted; could only stand or walk for two hours in an eight-hour workday; could only sit for two hours in an eight-hour workday; needed to lie down intermittently throughout the day because of his complaints of lower back pain; could lift 15 pounds occasionally and 10 pounds frequently, could carry 15 pounds for two blocks occasionally and 10 pounds for two blocks frequently; bending was limited due to lower pack pain and previous surgery and injury; pushing and pulling were limited due to bilateral shoulder osteoarthritis; and reaching was limited due to shoulder osteoarthritis. (*Id*. at 323–24). Dr. Orris further indicated that Plaintiff's medication could cause drowsiness and would reasonably be expected to further diminish Plaintiff's ability to walk, stand, or sit upright. (*Id*. at

324). He indicated that Plaintiff would have marked limitations in his ability (1) to complete a normal workday and workweek and (2) to perform at a consistent pace without an unreasonable number of lengths of rest periods. (*Id.*). Dr. Orris also found that Plaintiff would experience significant deficiencies in sustained concentration, persistence, and pace due to his condition. (*Id.*).

On January 12, 2011, Plaintiff was seen at the Outpatient Pain Clinic, and he reported that he was 65% better than before with increased functionality and reduced pain. (R. at 345). He stated that the pain is still present but tolerable at 5/10 with the help of medications. (*Id.*).

At the administrative hearing, Plaintiff testified that he has not worked since March 15, 2008. (R. at 27). Plaintiff stated his level of pain was 5/10, with burning pain on the right side of his lower back. (*Id.* at 28). He stated that he has been using a cane, as prescribed by the pain clinic, for nine or ten months. (*Id.* at 27–28). He has been on pain medication since 2008, which causes drowsiness and sleepiness. (*Id.* at 28). Plaintiff testified that he could walk three blocks at times using a cane, stand approximately 30–45 minutes at a time, and lift 15–20 pounds. (*Id.*). He stated that if he sits, walks, or stands in a certain position, his legs would go numb and limp. (*Id.* at 36). He can sit at most 30–40 minutes before numbness sets in, and has to stand for 10 minutes until the blood circulates back again, after which he can sit for another hour or so. (*Id.* at 28, 36).

Plaintiff testified that he stopped going to the grocery store and "pretty much" stopped driving in 2008. (R. at 30). He leaves the house twice a week. (*Id*. at 32). He cannot make his bed, vacuum, dust, mop, sweep, or do yard work, and cannot do laundry because he has to bend to the dryer. (*Id*. at 30–31). He can dry dishes sometimes, has no difficulty with personal care, getting dressed, taking a shower, and microwaving a meal or making a sandwich for himself. (*Id*. at 30). Plaintiff testified that he used to go jogging and play basketball and softball three times a week but had to give up those activities because he could not jump anymore due to lower back pain after his surgery. (*Id*. at 33). He watches television and plays cards with his mother. (*Id*. at 31–32). Plaintiff stated that he has to wake up twice a night to stand up because the nerves lock his leg up at times. (*Id*. at 29). He moves around minimally in the house once the medication kicks in. (*Id*. at 32). He is in bed 20 hours each day. (*Id*. at 29, 37). Plaintiff also stated that the three lumbar injections tend to dull his pain for three weeks at a time. (*Id*. at 34). He stated that he was scheduled to get further treatment at the pain clinic on April 12, 2011, a month after the hearing. (*Id*. at 34-35).

The VE opined that an individual with Plaintiff's age, education , and work experience—who can lift and carry 10 pounds occasionally, less than 10 pounds frequently; stand and/or walk a total of two hours during an eight-hour workday; sit at least six hours during an eight-hour workday; never climb ladders, ropes or scaffolding; occasionally climb ramps and stairs; occasionally balance, stop, crouch, kneel

and crawl, with a need to use a cane for ambulation—could perform sedentary un-skilled positions if the individual had a sit/stand option of standing for one to two minutes after sitting for an hour. (R. at 39-40). The VE also opined that if the indi-vidual was off task at least 20% of the day, due to the need to nap or lie down, it would rule out work altogether. (*Id*. at 40). Moreover, if the individual, as described in Dr. Orris's evaluation of Plaintiff, was limited to standing and walking two hours out of an eight-hour workday, sitting a total of two hours out of an eight-hour work-day, needing to lie down intermittently throughout the day, and capable of lifting and carrying 15 pounds occasionally and 10 pounds frequently, the individual would be unable to perform full-time employment. (*Id*. at 41–42).

## V. DISCUSSION

### A. The ALJ's Credibility Finding

Plaintiff contends that the ALJ erred in discounting his testimony about the na-ture and extent of his ailments. (P's Mot. 11–13). He asserts that the ALJ's credibil-ity determination failed to consider Plaintiff's treatments, including multiple epi-dural steroid injections in 2010, failed to consider Plaintiff's testimony about his limited activities, failed to consider his deteriorating condition since early 2010, and failed to explain how Plaintiff's daily activities undermined his assertion that he could not perform full-time employment. (*Id*. at 11–12).

In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); Social Security Ruling (SSR)[4] 96-7p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the

---

[4] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p.

Here, none of the reasons provided by the ALJ for rejecting Plaintiff's credibility are legally sufficient or supported by substantial evidence. First, as a preliminary matter, the ALJ failed to assess Plaintiff's credibility *before* determining his RFC. That Plaintiff's statements were "not credible to the extent they are inconsistent with the above residual functional capacity assessment" (R. at 16), is "backward reasoning," *Dogan v. Astrue*, 751 F. Supp. 2d 1029, 1042 (N.D. Ind. 2010). The ALJ's "post-hoc statement turns the credibility determination process on its head by finding statements that support the ruling credible and rejecting those statements that do not, rather than evaluating the [claimant's] credibility as an initial matter in order to come to a decision on the merits." *Brindisi v. Barnhart*, 315 F.3d 783, 788 (7th Cir. 2003). Under the circumstances, the ALJ should have determined Plaintiff's credibility on the merits instead of determining his statements to be incredible largely because of their inconsistency with the ALJ's RFC determination.

Second, the ALJ expressed doubt about Plaintiff's credibility because she found that the medical evidence does not support Plaintiff's allegation of limited walking and standing ability since the alleged onset date. (R. at 16). The ALJ noted that there are no treatment records between Plaintiff's back surgery on March 16, 2008, and his treatment in April 28, 2010. (*Id.*). She also observed that consultative examiners found that Plaintiff walked normally in December 2009 and April 2010. (*Id.*).

But from April 2010 through December 2010, Plaintiff was treated on five separate occasions, all directly related to his back injury. (*Id*. at 305, 315, 328, 336, 340). His doctors found the displacement of nerve roots and the abutting of spinal cords and nerve roots by the bulging discs. (*Id*. at 312). An April 2010 examination found "marked tenderness" in Plaintiff's lower back and concluded that he was suffering from low back pain with symptoms of right sciatica. (*Id*. at 284–85). The ALJ did not address Plaintiff's pain clinic records beginning in August 2010, which observed symptoms of radiculopathy and prescribed a series of lumbar steroid epidural injections. (*Id*. at 315, 328, 336, 340). The Court finds a clear pattern of the ALJ failing to address evidence favorable to Plaintiff, which support Plaintiff's claim that his condition deteriorated since early 2010. The ALJ cannot discuss only those portions of the record that support her opinion. *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion."); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence. It is not enough for the ALJ to address mere portions of a doctor's report.") (citations omitted). The ALJ also failed to consider a CT scan on May 11, 2010, finding that Plaintiff has degenerative disc disease, and an MRI of the lumbar spine on June 8, 2010, showing the displacement of a nerve root and that the disc bulge is abutting Plaintiff's spinal cord and nerve root at different levels and also effacing the ventral thecal sac (*Id*. at 309,

312). These records show that although Plaintiff's condition may have improved after his surgery in 2008, his condition deteriorated requiring treatment starting in April 2010. In fact, there is no evidence in the record to contradict Plaintiff's claim that his condition worsened in early 2010. (P's Mot. 8). Even if the evidence fails to support Plaintiff's claim that he was disabled beginning in March 2008, the ALJ cannot ignore evidence establishing a later onset date. *See* SSR 83-20, at *1 (the ALJ establishes the onset date of disability); *accord Briscoe*, 425 F.3d at 352.

The ALJ also expressed doubt because Plaintiff stated that he "pretty much" stopped driving in 2008 but also indicated that he drove in a report of activities of daily living he completed in December 2009. (R. at 16, 30, 192). But regardless of whether he stopped driving in 2008 or 2009, it do not contradict evidence that Plaintiff's condition deteriorated in 2010. Also, Plaintiff's statements showing inconsistency in his condition over the course of years does not necessarily mean that his statements are not credible. *See* SSR 96-7p, at *5 ("[T]he lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms.").

On remand, the ALJ shall reevaluate Plaintiff's complaints with due regard for the full range of medical evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). If the ALJ finds good reasons for not considering this evidence, the ALJ shall provide explicit reasons for her decision not to do so.

## B. The Weight to be Afforded to Dr. Orris's Opinion

Plaintiff contends that the ALJ erred in giving "no weight" to the opinion of Dr. Peter Orris. (P's Mot. 9–11). Plaintiff asserts that even though Dr. Orris was not a treating source, the ALJ was required to assess the weight of Dr. Orris's opinion in accordance with the regulatory checklist of factors. (*Id.* 10–11).

In December 2010, Dr. Orris examined Plaintiff and opined that he had serious limitations in completing a normal workday without interruptions and in performing at a consistent pace without an unreasonable number and length of rest periods. (R. at 325). Dr. Orris concluded that Plaintiff would experience significant deficiencies in sustained concentration, persistence, and pace. (*Id.*) He further noted that Plaintiff would need to lie down intermittently throughout the day and his medication would cause drowsiness. (*Id.* at 324). Dr. Orris further found that Plaintiff could sit, stand, or walk for only two hours in an eight-hour workday. (*Id*). These physical limitations contradict the ALJ's RFC finding.

By rule, an ALJ "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). In evaluating the weight to give an examining physician's opin-

ion, the ALJ must consider relevant medical evidence, the consistency of the opinion with the record as a whole, the physician's specialty, if any, and other factors which support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)–(6), 416.927(c)(3)–(6). Generally, more weight is given to an examining source than a nonexamining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1).

In her decision, the ALJ's analysis of Dr. Orris's opinion is limited to a single paragraph:

> As for the opinion evidence, the undersigned gave no weight to the statements prepared by Dr. Peter Orris. Dr. Orris is not a treating source and he only saw [Plaintiff] on one occasion on December 7, 2010 to do a disability evaluation. He admits that his conclusions are based on [Plaintiff's] self-reports.

(R. at 16) (citation omitted). The ALJ also noted that two consultative examiners, Drs. Weiss and Shah, each observed Plaintiff walking normally in December 2009 and April 2010 respectively. (*Id.*).

Under the circumstances, the ALJ's decision to give Dr. Orris's opinion "no weight" is legally insufficient and not supported by substantial evidence. First, the ALJ's decision to give some weight to the opinions of Drs. Weiss and Shaw while giving no weight to Dr. Orris's opinion is unreasonable. Like Dr. Orris, neither Dr. Weiss nor Dr. Shaw was a treating source. (R. at 276, 282). Instead, each doctor saw Plaintiff only once, for 30–35 minutes each. (*Id.*).

Second, Dr. Orris's opinions were not based solely on Plaintiff's self-reports. If a "physician's opinion is . . . based *solely* on the patient's subjective complaints, the

ALJ may discount it." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (emphasis added). Dr. Orris's opinion that Plaintiff would need to lie down intermittently throughout the day because of lower back pain is not a mere recitation of Plaintiff's self-report but was also based on his review of an MRI report and the neurosurgery progress notes. (*See, e.g.*, R. at 312 (multilevel degenerative disc disease, displaces transversing nerve root, effacing ventral thecal sac, abuts nerve roots), 313 ([p]atient pain a little worst since last seen, using a cane for a month for balance when in pain)). And Plaintiff's self-report was necessarily factored into Dr. Orris's analysis as almost all diagnoses require some consideration of the claimant's subjective symptoms. *See McClinton v. Astrue*, No. 09 C 4814, 2012 WL 401030, at *11 (N.D. Ill. Feb. 6, 2012 ("Almost all diagnoses require some consideration of the patient's subjective reports, and certainly [the claimant's] reports had to be factored into the calculus that yielded the doctor's opinion."). The ALJ failed to identify any evidence in the record to suggest that Dr. Orris had reason to disbelieve Plaintiff's self-report, or that Dr. Orris relied unnecessarily on Plaintiff's description of his symptoms rather than his own observations, in concluding that Plaintiff was incapable of full-time work. *See Davis v. Astrue*, No. 11 C 0056, 2012 WL 983696, at *19 (N.D. Ill. March 21, 2012) ("The ALJ fails to point to anything that suggests that the weight [the claimant's treating psychiatrist] accorded Plaintiff's reports was out of the ordinary or unnecessary, much less questionable or unreliable."); *Ryan v. Comm'r*, 528 F.3d 1194, 1199–200 (9th Cir. 2008) ("[A]n ALJ does not provide clear

and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations.").

Third, the medical evidence supports Dr. Orris's December 2010 opinion. While there was a lack of treatment up to April 2010 following Plaintiff's surgery in 2008, ALJ's reliance upon Dr. Weiss's assessment "is erroneous to support her findings *after* the worsening" of Plaintiff's condition in early 2010. (P's Mot. 8). As discussed above, the medical records after April 2010 demonstrate that Plaintiff's condition deteriorated. (*See, e.g.*, R. at 284–85 (consultative examiner observing marked tenderness in Plaintiff's lower back, straight leg raising 45 degrees on the right and 55 degrees on the left, and low back pain with symptoms of right sciatica), 305 (pain clinic treatment prescribing Diazepam, Ibuprofen, and Methocarbamol for muscle spasm and back pain), 309 (CT Lumbar Spine finding of degenerative disc disease), 310 (cane issued by Stroger Hospital), 312 (MRI finding of disc bulging abutted spinal cord and nerve root at different levels, displacement of nerve root), 313 (neurosurgery progress report observing that patient's pain was a little worse since last seen), 315 (pain clinic examination finding low back pain with radiculopathy), 328, 336, 340 (three lumbar steroid epidural injections over two and months)). The ALJ neither disputes nor acknowledges these findings in her decision.

Fourth, the ALJ has failed to address the checklist of factors to support her rejection of Dr. Orris's opinion. *See* 20 C.F.R. §§ 404.1527(c)(3)–(6), 416.927(c)(3)–(6).

Here, Dr. Orris's opinion is entitled to at least some weight—he examined Plaintiff's physical movements, his findings were consistent with post-April 2010 medical evidence, and he is an occupational and environmental medicine specialist. (R. at 324–25).

Finally, the Commissioner argues that Dr. Orris's opinion is internally inconsistent. The Commissioner notes that Dr. Orris approved a final report on December 7, 2010, where another physician noted that "even though the patient has a cane for stability, he is able to ambulate without difficulty or use of the cane"; flexion was 90, extension was 30, bilateral rotations were 30; straight leg raising was negative; and his motor strength was 5/5. (D's Mot. 13). But the ALJ did not raise this issue in her decision, and the Court must limit its review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.,* 318 U.S. 80, 90–93, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir.2010) ("the government's brief and oral argument . . . seem determined to dissolve the *Chenery* doctrine in an acid of harmless error"). In any event, the Commissioner's contention is not entirely accurate. The physician whose report Dr. Orris approved also noted that Plaintiff had not reached his maximal medical improvement, that it would be beneficial for him to start physical therapy for the radiculopathy, and that he should be revaluated because the pain and the treatment for his pain was contributing to his current disability. (R. at 344). Even if Plaintiff's improved symptoms were more than isolated instances, it does not necessarily mean that he was capable of maintaining a full-

time work schedule. *See Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce, and that difference is borne out in [the physician's] treatment notes.").

On remand, the ALJ shall reevaluate the weight to be afforded Dr. Orris's opinion. If the ALJ has any questions about Dr. Orris's opinion, she is encouraged to contact Dr. Orris, order a consultative examination, or seek the assistance of a medical expert. *See* SSR 96-5p, at *2; 20 C.F.R. §§ 404.1517, 416.917, 404.1527(e)(2)(iii), 416.927(e)(2)(iii); *see also Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) ("If the ALJ thought he needed to know the basis of medical opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.") (citation omitted). Prior to determining the weight to be afforded Dr. Orris's opinion, the ALJ shall explicitly consider the requisite factors.

## D. Summary

In sum, the ALJ has failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). On remand, the ALJ shall reassess Plaintiff's credibility with due regard for the full range of medical evidence. The ALJ shall also reevaluate the weight to be afforded Dr. Orris's opinion, explicitly addressing the required checklist of factors. The ALJ shall then reevaluate Plaintiff's physical impairments and RFC, considering all of

the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [17] is **GRANTED**, and Defendant's Motion for Summary Judgment [25] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R :

Dated: November 7, 2013

_____
MARY M. ROWLAND
United States Magistrate Judge